We hear argument in the International Association of Machinist Workers v. DynCorp and Mr. McGuire. Good morning. May it please the court, my name is Michael McGuire and I and my law firm of Shaw and Rosenthal in Baltimore, Maryland, represent DynCorp Corporation in this matter. This is a bit of an unusual case in that the court sees many cases where it involves a party who's refusing to arbitrate a grievance on procedural grounds in violation of the Supreme Court's John Wiley decision. That's not this case. We see cases where an employer has submitted to the jurisdiction of an arbitrator and dislikes the result and therefore appeals. That's not this case. Those are probably 95% of the cases that come before the court. Nor is this a case where the collective bargaining agreement is silent as to any exclusions from arbitration and the employer refuses to arbitrate on a substantive arbitrability grounds. That was the Marvell Poultry case from the Fourth Circuit, which is probably 4 or 5% of these cases. This is that relatively rare 1% case where the parties, without a doubt, agree to exclude certain types of terminations from the arbitration provision of the collective bargaining agreement. That is terminations which are at the direction of the United States Air Force. It is that rare case where the intent of the parties is clear to exclude a category of cases from arbitration, those where the action is at the direction of the military. And the only question is whether this is one of those cases. Well, is it really anything that's at the direction of the military? Because the collective bargaining agreement seems to be much more refined than that, particularly in Section 7. The collective bargaining agreement deals with both contractual and security reasons. If the military requests, the union agrees that any action, in the event the military, for either security or operations reasons, advises the company that any employee in the union bargaining unit is restricted from access to government property or restricted from work, the union agrees that such action as the company may take, which is a fairly broad discretion that the company has, such action that the company may take pursuant to its contractual and or security obligations to the government will not be contested nor arbitrated. So in this situation, DynCorp, of course, is a contractor. Their scope of work, according to the contract, is to provide world-class maintenance, transient alert, fuel supply and munitions service required support at Andrews Air Force Base. Joint Appendix 202, the objective of the contract of this is to provide the 89th Airlift Wing and the 11th Wing located at Joint Base Andrews Naval Air Force Facility and their customers with fixed wing and rotary aircraft maintenance, fuel, munitions, supply, transient alert services in support of the safe and timely transportation of their customers, which include the President of the United States, the Vice President, Cabinet officials, members of Congress, civilian, military and foreign leaders. The contract says this is a 24-hour-a-day, seven-day-a-week, no-fail, high-expectations mission. The 11th Wing Guard and 89th Airlift, as well as our customers, count on these services to provide world-class airlift support. So are you contending that any discharge that was directed by the Air Force on whatever grounds would not be arbitrable? No, Your Honor. The contract with the Air Force says that any discharge assignment under the contract for reasons of security or misconduct. So where is that word, misconduct? The word misconduct is in the contract between the company and the government, Section 2.4.13, Joint Appendix 208. But that's between the company and the government and not between the union and the company, and that would seem to be the pertinent contract here. And it is, Your Honor, but we would submit that the collective bargaining agreement incorporates the contracts between the company and the government in Article I, Section 7 of the collective bargaining agreement, which is sort of the trump card. Nothing contained in this agreement, meaning the collective bargaining agreement, is intended to place the company in violation of its contracts or security agreements with the government. Clearly, the parties could have simply said security agreements, but they've gone farther. How is this discharge related to a security agreement? I mean, I thought that the discharge really was for purposes of insubordination or for an abrasive comment that was made by the individual in question, an impudent comment that was made by the individual in question. But how is that security related? Your Honor, we do not contend that it was security related. We contend that it was misconduct as determined by the military, which then under the contract between the company and the military. But where in the collective bargaining agreement, where in Section 7, are the words misconduct used? I mean, that's a paraphrase on your part, is it? They are not used, Your Honor. It is our position that the incorporation of the company's contracts with the government includes the contract that says if the government tells us to remove someone for security or misconduct, we must do so, because it clearly says the union agrees that action as the company may take pursuant to its contractual and or either its contractual obligations to the government or its security obligations. I'm sorry, what part of Section 7 are you reading now? B, Your Honor. B. Yes, about halfway through B. Well, you know, if we were here and it was some sort of a declaratory judgment action on the merits, it might be a different take, but in arbitration we have a different set of rules, and we have to be able to say under our precedent that we can say with positive assurance that the argument made by the party who seeks arbitration essentially has no merit. It seems like to me that's a difficult argument to make in this case, that it is an arguable case that the limitations in Section 7 are security related and encompass only security related matters. So whereas if you were asking for a declaratory judgment on the merits in another setting, you might have a stronger argument, but it seems in the field of arbitration it's somewhat weaker because of that precedential requirement of positive assurance. Yeah, I would submit to you, Your Honor, this obviously was decided on cross motions for summary judgment. The union said arbitration was to be compelled. We said it should not, which at least one of the cases indicates is similar to a declaratory judgment action that the employer is asking the district court to declare the matter non-arbitrable. Based on the Supreme Court's decision in Granite Rock, there clearly must be an intent to arbitrate this particular type of dispute, and I would submit to you that the Third Circuit case in Trap Rock, you mentioned presumptions, and honestly the parties have spilled a lot of ink in their briefs talking about presumptions of arbitrability and whether arbitration clauses are broad or narrow. But I would submit to you that when you have a specific carve-out clause, an exceptions clause, then there really are no presumptions to be applied at that point. You're just reading the language of the clause. Indeed, the Fourth Circuit in Peabody Cole said the court will not blindly apply a presumption favoring arbitrability when there are crucial nuances to be considered. And we would submit to you, as I indicated sort of at the beginning, that this is the 1% case where there is actually a carve-out. There is a strong presumption in favor of labor arbitrability, isn't it? I mean, that's thought to be fundamental to industrial peace. I would submit to you, Judge Wilkinson, except where the parties have executed a carve-out, and I believe that's what . . . Well, we can argue about that. My reading of this provision, I think Judge Motz's, was that the exception pertained to matters of national security and access to classified information. But this individual, when he was discharged, was not a judge to be someone who would compromise classified information. It had to do with . . . more, it seems to me, with bad chemistry between the individual and the supervisor. And, of course, it is a little bit coincidental that this person who's discharged happens to be the president of the union. So, I don't know what that means, but it's certainly a fact in the case. Well, as Your Honor knows, the cases indicate that we're not to be looking at the substantive factual background of the case because it's undisputed the military wrote a letter saying, remove him from . . . But did the military indicate in the discharge directions that he was not to be trusted or given access to classified material? Your Honor, we're not contending that the military's direction was based on security concerns. It was based on misconduct concerns, which they . . . That's the . . . I mean, I agree with Judge Agee, that's an arguable point, but I'm just not sure . . . I mean, the specific trumps the general, and the Section 7 of that collective bargaining agreement is the specific provision. None of that prohibits you from arguing in an arbitration proceeding that you properly dismiss the employee for cause. You may well have had . . . There may well have been cause to dismiss the employee because of insubordination, but that can be raised in arbitration, can't it, of whether the dismissal was properly for cause? But, Your Honor, that's exactly what we've contracted with the union not to have to do. You say that, but I'm just not sure that I find that in the language. Clearly, the language incorporates contractual obligations with the government. Those words are there, contractual and or security obligations. Is that your primary argument, that the incorporation by reference of the Air Force contract with the incorporation, that's your best argument for non-arbitrability, or is it the plain language of Section 7B, which is your primary argument? Well, I think it is both A and B. A has the language which indicates that nothing contained in the agreement, that's the collective bargaining agreement, last sentence of it, is intended to place the company in violation of its contracts or security agreements with the government. The last phrase of A, and then it is B, excuse me, in the event that the military or government agency is duly concerned with security regulations or operations. So in sum, I think what your argument is, is that any request by a governmental source that employee A be removed from a particular contract, that's the end of the matter, no arbitration. Is that how you interpret the carve out? Well, it would be the agency that we have the contractual obligation with, which is the United States Air Force in this case, and it would need to either be for misconduct or security reasons. I don't believe they could request that someone be removed for something that's not misconduct. They obviously concluded, as Judge Wilkinson was indicating, that the boorish language and behavior was misconduct. It's undisputed they wrote us a letter saying it's misconduct, get rid of them. So that word sort of takes on certain magical quality. It does, because the word misconduct is in our agreement with the government, and that, I submit, that agreement is being cross-referenced here where it says contractual and or security obligations. We don't need the words and or if contractual is meaningless. It's either the contractual obligations or the security obligations or both. It seems like it would have been a lot simpler to have written this Section 7 if that was the intent of the parties simply to say, if the company's agreement with the government requires the dismissal of an employee, that decision shall not be arbitrable, period. And that would be, you wouldn't need A and B. That's all you'd need to say. True, and if it was only intended to deal with security-related issues, it could have been written differently as well and left out the references to the other company contracts with the government, which clearly are mentioned. I believe my time is up, Your Honor. Thank you. Mr. Roth? May it please the Court, I'm Andrew Roth on behalf of the Appellee Cross-Appellant Unions. I believe I've asked for 13 minutes and reserved seven for rebuttal on our cross-appeal. The Court is absolutely right in terms of the strong presumption in favor of arbitrability of labor disputes under collective bargaining agreements that contain an arbitration clause, as this one does. The Supreme Court's most recent decision in that regard, the AT&T decision, this Court's decision a couple of terms ago in the Peabody Holding case, I think are very clear and unambiguous on that point. We, frankly, don't even feel that we need to rely at all on any presumption in favor of arbitrability in this case. We believe that the exclusion clause, Article I, Section 7, that's relied on by DynCorp in this case is absolutely clear and unambiguous. The District Court was absolutely right. It is confined to a very specific situation in which the government directs that an employee be removed because there is some issue with his security status, his security clearances. And B is very clear on this. In the event that the government says to the company that an employee is restricted from access to government-managed property, access, security clearance, whatever, or restricted from work on or access to confidential information, that's the triggering of the union's agreement in the next clause to not arbitrate the matter. It's a conditional agreement in the event that something happens, and that something is a notification from the government of some type of security issue with that employee. And the entire clause, the entire section, it's got four sections, not just A and B, everything is focused with laser-like precision on that issue of making sure that an employee who is working on a military base, there is no issue with respect to his security clearances, his authorizations to enter unescorted onto the premises. If someone is discharged for reasons of insubordination or whatever with a supervisor, is that individual likely really to be not to be a security risk? He's obviously very disgruntled and very displeased with either his supervisor or the working conditions or whatever. Is that individual, notwithstanding an altercation with a supervisor, somebody you'd want to let have access to the highest levels of classified information? I suppose there might be a set of facts in which there was such an adversarial relationship between a supervisor that you might surmise that there is such an issue. The facts here are nothing of that nature. It was a comment about, well, shit you some paperwork, which the employer itself investigated and found that that comment wasn't even directed at the supervisor. It was directed at another employee. So I suppose that could come up and the government could invoke that. The government certainly didn't invoke that here. It didn't say not only is he guilty of misconduct, but his misconduct is of such a nature that he poses a security risk. I suppose there could be a case where that might arguably come, if that's what the government said in their notice, that it might come within this clause. But the facts of this case certainly don't bring that to bear in the slightest, Your Honor. I don't want to go outside the record, but in the history of this agreement, have there been any similar circumstances where the carve-out was implemented? I don't know the answer to that question, Your Honor, and there's nothing in the record on that point. So I would hesitate to speculate on that. And, again, getting back to the- It has to be almost that the specific trumps the general. I think our argument is stronger than that. There is no general here. I mean, they keep harping on the word contract, but they take that word out of context. In the very first paragraph that they rely on in 7A, it says, the parties to this agreement hereby recognize the company's obligations in its contracts with the government pertaining to security, security clearances, and access to government-managed property. That's all that this provision deals with, even when it's only referencing those contractual obligations with respect to security. Now, in typical belt-and-suspenders fashion, I mean, I would ask the court to look at the Sixth Circuit decision, Doe v. Boland, which I think rightly says that lawyers, rightly or wrongly, they often write contracts or legislatures write statutes, null and void, arbitrary and capricious, and the like. So here the parties said contracts and or security obligations, but when they define the word contracts for purposes of this provision, they defined it specifically in reference to contracts dealing with security, security clearances, and access to government-managed property. So I would again be speculating as to why the parties felt the need to do belt-and-suspenders here. I think certainly this provision is clear enough without the belt-and-suspenders. You're saying that the words that the company is latched onto were not used in a vacuum. Correct. And, you know, I have to say every argument to try to fit this dispute into this provision has been an out-of-context argument. I mean, they seize on the second portion of Article 7B, which says, the union agrees that such action as the company may take, pursuant to its contractual and or security obligations to the government, will not be contested. So if you read that in a vacuum, it's saying anything the government does will not be challenged. But you can't read it in a vacuum. There's a prior clause which says in the event that something happens, in the event that the government notifies DynCorp that there's a problem with the employee's security status, then the union will not challenge it. So when you view the clauses in context, and you also view it against the background of 7A, which talks about contracts relating to security agreements, I think this provision is about a plain and unambiguous arbitration exclusion provision as you're going to find. I mean, I really don't. I think from putting aside the presumption, from a straight contractual reading standpoint, even if a declaratory judgment action were brought, and this wasn't against the background of that presumption, I think the company would lose and lose badly. Now, when you bring in the presumption, the positive assurance test, my submission to you, and this is sort of the crux of our cross-appeal on the issue of attorney's fees, is when you look at the plain language combined with the positive assurance test, there is no way that a fair-minded company attorney could look at this and say, and assure their client they don't have to arbitrate this dispute. I would say just the opposite. And it's now been two years since Mr. French was discharged, and we're still here now in the Court of Appeals asking for an order of arbitration, which I think the union should never have been put to the task of suing for. This is a clear-cut case of the notion that this could satisfy the positive assurance test is fanciful. And this court in the Peabody-Holding case said, we're not accepting fanciful arguments. We have to be mindful about abuses of the duty to arbitrate. I would submit to this court, and I don't say this lightly, that this was a poster child case of abuse of the duty to arbitrate. The duty to arbitrate could not be any clearer here. It could not be any clearer than a misconduct direction from the government. Now, Your Honor, Judge Wilkinson, you pointed out that that may very well give them a good merits argument. I mean, we think that there's evidence that's going to come out in the arbitration that this was sort of a collusive situation between the government and the company. They both had issues with this employee, and they said, all right, let's sort of gin up a way to get rid of him. And, you know, we'll have to prove that. The company doesn't really contend that this is security-related. Absolutely does not contend that. There's never been any contention, and there's no basis for that. The government was very clear in its direction to the dying corp that, in its view, this employee should be removed on the basis of misconduct, and misconduct that certainly from the government's standpoint did not raise a security issue at the base. There was no indication of that in the letter from the government. So we think that if you were going to sweep all misconduct discharges into the exception, there would have been a very easy, straightforward way to express that. Well, Judge Agee pointed that out, and we made that point in our brief, and I think that's absolutely clear. I mean, not only would there have been a clearer way, but, I mean, this is a full-page provision. It goes in chapter and verse. It's titled Security Regulations. It's very precise. The provision could have read, there's an exception. I mean, there's an exception to the arbitration clause for any discharge for whatever reason, misconduct or otherwise, that the government contractor has directed. One-sentence provision, Your Honor, I think would have done the trick. Yes, absolutely. But you don't contend the company's argument is frivolous, do you? I do. I don't think that. I do believe that. I do think it's frivolous. I don't think that's the standard. I didn't mean to suggest that. Yeah. But it's not frivolous. It doesn't cross the frivolous bar. Well, I think it's frivolous, Your Honor, against the background of the presumption, because I think, again, without the benefit of the presumption, we win this case. We have the much better of the reading. As a matter of fact, I don't think there's a plausible reading of the statute on their end. But their burden to avoid arbitration here is to show that we have no plausible argument. I mean, I hate to throw the word frivolous around. I have it in the brief, and I don't feel that's our burden, because that's not the standard that this Court has set. But you asked me the question, and would I attach that label to it, against the background of the positive assurance test, because that's the burden on the company, to avoid arbitration. They have to be able to say that this provision with positive assurance takes this out of the normal rule in favor of labor arbitration. You have to argue something close to that, though, if you want to prevail on your attorney's fees argument. The standard that the Court has set is without justification. And, you know, we've argued in our brief that – Pretty close to frivolous. I think that, again, just like the parties could have used the word frivolous, could have used the word – could have expressed their intent if that had – In the attorney's fees business, and we're jumping ahead of each other, jumping ahead of things a little bit, but wouldn't a district court have some discretion on whether to award attorney's fees or not? Just for this reason, you're talking about delays in the whole proceeding and everything, and, you know, if we have fights over attorney's fees, isn't that one of those threshold issues that's really going to delay things at the arbitration level? Well, if they had gone straight to arbitration, there wouldn't have been any attorney's fees, and we wouldn't be – There would be no delay. The delay is the reason why, Your Honor, I think there is no discretion. There are very important – This court has emphasized in the Peabody-Holt case. There are very important policy implications here. I mean, this is a victory for them. If they can put off arbitration, delay arbitration, put the union to this expense for two years, and then they're told, all right, now you've got to arbitrate. Well, what's – That's a victory for them. I mean, this is the union president. The union has been precluded from trying to get its president back into work on the flimsiest – I mean, get a hearing on that point. That undermines the union. The courts have made that point. That doesn't get down to the point to the nitty-gritty of whether the argument was frivolous or not, and what I'm asking you is why wouldn't – to avoid an appeal, an attorney's fee appeal, because the Supreme Court repeatedly makes the point we don't want attorney's fees to be a big second litigation. I think one way to avoid that in these – there's a close question as to whether this was without justification or not, or whether it's frivolous or not, but why wouldn't we give the district court a bit of latitude on something like that? I realize it's not a strict factual finding, but sometimes even where something isn't a strict factual finding, it could be that weighing the strength of the argument is something where we should respect the district court's view simply to avoid these continual attorney's fees appeals, which run the meter, and I don't think they do anything in particular. So that's the counter to what you're suggesting, but at any rate, you've reserved some time for rebuttal. Would you like me to address that in rebuttal, Your Honor? Yes, I would like you to address that in rebuttal. Thank you. I will do that. Thank you. And Mr. McGuire, you have also reserved time. Yes, Your Honor. Let me first just say, and I certainly intimated it earlier, this presumption in favor of arbitrability arises virtually 99% of the time in cases that do not have a carve-out. Obviously, the parties have decided here there should not be any presumption concerning arbitrability with regard to certain types of disputes. Obviously, we say it's disputes where we act based on our contractual… By the way, I don't understand why a carve-out would undercut the presumption of labor arbitrability, because there's still a large area. A carve-out specifically presupposes a residuum. That is a large area that's not carved out. Absolutely. And I don't understand why in delineating the line between the carve-out and that which is not carved out, I would think that as to where that line was drawn, the presumption of arbitrability would still figure in. Well, there's certainly a presumption of arbitrability with regard to all the matters outside the excluded area. If we had terminated this employee for absenteeism, which has nothing to do with misconduct, we would not be standing here arguing that it's not arbitrable. But where we have a contract with the government that requires us to take certain actions based on their direction for misconduct. Well, but there is… Let's talk about the reasons for applying the presumption of arbitrability. And the reasons are not only to maintain industrial peace, but to get the matter to an arbitration as promptly as possible and not to simply allow a union president to be discharged and the whole thing be kept on, put on hold for several years because of litigation over arbitrability. I mean, the same reasons that support the presumption of arbitrability in the first place would seem to support it in delineating what's carved out and what's not. Well, as the Supreme Court said in the Granite Rock case, Your Honor, arbitration is a matter of consent and thus the way we dissolve… It is the way to dissolve disputes, but not all disputes, only the ones that the parties have agreed to submit to arbitration. And we are suggesting to Your Honor that where the parties have agreed not to submit contractual and security issues to arbitration, that the presumption should not carry any weight. And we're just down to reading the language of Section 7 and how we parse that. I mean, I hear you saying that, but the problem with the language in Section 7 is the whole section is entitled Section 7, Security Regulations, and then the word security and access to classified information, it threads through both Section 7a and Section 7b. I mean, it is the motif, if you will, of those two sections. And, you know, if you wanted your view to prevail, there was a simple, straightforward, clear way of getting it into the contract. But you didn't do that. And so why should we do your collective bargaining work for you with a strained interpretation of the law? That's the problem. Your Honor, well, obviously we disagree respectfully that it is a strained interpretation. We're almost reading out those words contractual and or. Well, but you're reading out the words security and access to classified information, and those words are used over and over and over again. And you're trying to get us to become a bargaining agent for you. And you didn't win this at the bargaining table, for better or for worse. And your argument is, you know, it's not foreclosed. You just have to make it in the proper forum. Well, I would, at the risk of repeating myself, Your Honor, I think when it says contractual or security, it could be based on our contractual obligations to the government, which are mentioned at several places there. I'm about to run out of time. I'd like to say a couple sentences about the attorney's fees issue. Absolutely. The case, obviously, is Marvel Poultry, which sets out two different standards. One standard is when a party is arguing that the arbitration clause does not cover this dispute, which is our case. That's the lenient standard. The other standard really applies when a party either refuses to arbitrate on procedural, not substantive grounds, or contests the decision itself and argues that the arbitration should be set aside. But in our situation, and it's in Roman numeral 4A, when the challenge goes to the fundamental issue of arbitrability or whether an arbitration award draws assessments, the standard for assessing justification is a relatively lenient one of whether there's any arguable basis in law. Because these challenges go to the fundamental question of the arbitrator's power to act, and obviously we're submitting the arbitrator does not have power to act here, they must be considered sufficiently justified for these purposes unless there is, and here are the words, literally no reasonably arguable legal support for them. That is the standard in this circuit where challenges are being raised to the authority of an arbitrator. And I would submit to Your Honor, and thank you for indulging me with this extra time, I will stop shortly, that of all the cases that the court may decide we ought to relook at that particular standard, when you have a case like this with a specific carve-out for certain kinds of cases that the company has relied upon to... I mean you can have arguments that are not prevailing arguments, but are still non-frivolous arguments. I mean the fact that you might not ultimately prevail on something is a far cry from saying that what you brought up here was frivolous. Those are different questions. And indeed the Supreme Court in Granite Rock is saying, the contracting party has a right to bring forth those arguments if he feels that this matter is not arbitrable substantively. You know, we're not playing around with time limits. You didn't file it in time. We understand that those are matters for the arbitrator. But I would just submit, Your Honor, that to the extent the court was going to revisit Marvel Poultry, this would hardly seem to be the... No, we don't revisit things in panels. But anyway, thank you. Thank you. Okay. Thank you, Your Honor. I do want to just get right to the issue of attorney's fees and to address your question, Judge Wilkinson, about whether this is a proper occasion to give discretion to the district court on the issue of attorney's fees. I believe it is not. I believe this should be a de novo review situation. In Marvel Poultry... I know it's a de novo situation, but there are... And it may be a slight tweak of Hornbook law, but in light of the Supreme Court's pronouncements about not having extended attorney's fees litigation, there may be de novo situations in which a district court's view is entitled to some consideration. I just respectfully disagree with that, Your Honor, because I think the Supreme Court case, certainly the Hensley case that was cited, was very clear in context that what they were talking about was not the threshold issue of whether there should be a fee award at all, but to avoid a second litigation battle about the amount of the fee. And obviously that frustrates courts when you're getting into it, and the Supreme Court specifically urged parties in all situations where it was possible to settle on the amount of the fee. But the Supreme Court certainly did not say that parties should not press their entitlement to fees at all. And this court's decision in Marvel Poultry is evidence of that. I mean, that was a reversal of a district court denial of fees in a situation where the employer unjustifiably refused to implement an arbitration award. So the court didn't say, well, we're not going to look at this because we don't want to prolong the litigation. I think that's fairly audacious on the company's part to accuse us of prolonging the litigation when we wouldn't have had any litigation at all had they honored their clear duty to arbitrate in this situation. And not only is the Supreme Court litigation not apt here, but there's a line of it. Marvel Poultry is in this line, although it was obviously a slightly different context. But I would... Judge Easterbrook in the Roadmaster case said, if there is a strong policy in favor of labor arbitration, quick, inexpensive labor arbitration to keep labor peace, to promote efficiency and to avoid, you know, undermining the relationships between the parties, the bargain relationships between the parties, he said it would make a mockery... make a mockery out of the cases recognizing those policy interests to not award fees in a situation where, what he called it, was a feeble effort to avoid arbitration. We believe, whether you want to use the word frivolous or not, we believe this was a feeble effort. The district court, in terms of giving discretion to what the district court said, the district court, it was a one-line sort of back of the hand. He said, the issue presented is sufficiently close that the employer justifiably declined to arbitrate its dispute with French on the ground that the contracting officer had requested his removal from the contract. Well, that's not a ground for not going to arbitration. That may... it's not... and it's not close. It may be close on the merits of the arbitration. You know, we have... I will readily acknowledge that when, you know, given that the government wrote a letter saying he was guilty of misconduct and you need to remove him, that presents a challenge to the union at the arbitration. We're going to have to overcome that. So that's close. But the issue of going to arbitration, we would submit, is not close at all. And certainly that one... you know, if the district... There are situations where a district court would say, you know, I've heard this witness, you know, he doesn't, you know... I don't ultimately find in his favour, but he was credible, you know, he had a decent argument. You know, when he writes, you know, a two-page opinion saying, you know, for these reasons I've weighed this carefully and I conclude that attorney's fees are not justified here, then I think that's a proper situation to give a lot of weight to what the district court has to say. But when the district court just sort of, you know, against the background of these very significant policy interests in favour of awarding fees that have been recognised by a number of court appeals, including this court in the Maribel Poetry. And let me make one final point about Maribel... It all comes down to whether, in our judgment, the argument here was without justification or frivolous. I mean, it's really... We can talk generally about all these things, but it all comes down to a question of whether we think the argument was frivolous. Again, I mean, the court didn't use the word frivolous in Maribel Poetry... Without justification. Yeah, I think vexatious, I mean, it didn't... I would put it in layman's terms. They didn't have a leg to stand on here and they've now created a situation where... And this is very important, I think, in terms of Maribel Poetry. Maribel Poetry awarded fees. It was also a discharge... Two discharge cases, actually, in Maribel Poetry. But at the time that that challenge to the merits of the arbitration award came, one of the employees who was put back to work by the arbitrator had already been put back to work and the only issue was the amount of the remedy. So there was no issue of delaying in that employee getting justice before an arbitrator and getting put back to work. The second employee who was discharged in that case turned down an offer of reinstatement. So, again, the only issue that the company was fighting was on the dollars in terms of the reinstatement remedy. In terms of the remedy. Is there anything further, sir? No. Andre, do you have anything to add? Thank you, Your Honor. We have no further questions. We'd like to come down and say hello to you and then we'll move into our next case. Thank you.
judges: J. Harvie Wilkinson III, G. Steven Agee, Andre M. Davis